UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

METROPOLITAN LIFE INSURANCE COMPANY,

                        Plaintiff,

-against-

JUDITH KOWAL RUGGIERO, REGINE BOUCHEREAU, and KEREEN TOMPKINS,

                        Defendants.

23-cv-10610 (NSR)

OPINION & ORDER

---

NELSON S. ROMÁN, United States District Judge:

    Plaintiff Metropolitan Life Insurance Company ("Plaintiff") initiated this interpleader action on December 5, 2023, seeking the Court's resolution of competing claims to the proceeds of a life insurance policy, against Defendants Judith Kowal Ruggiero ("Ruggiero"), Regine Bouchereau ("Bouchereau"), and Kereen Tompkins ("Tompkins") (collectively, "Defendants").

    Presently before the Court is Tompkins' Motion to Dismiss Plaintiff's Amended Complaint and Defendant Bouchereau's cross-claims against Tompkins pursuant to Federal Rules of Civil Procedure 12(b)(6). For the following reasons, Tompkins' Motion is DENIED in its entirety, Plaintiff's Interpleader Application is GRANTED, and Plaintiff's Motion for Attorneys' Fees is DENIED.

## BACKGROUND

    The following facts are derived from the Amended Complaint ("Am. Compl.") and are taken as true and constructed in the light most favorable to the Plaintiff at this stage.

    Steven Kowal ("Decedent") was a participant in the National Grid Group Insurance Plan ("the Plan"), an ERISA-governed employee welfare benefit plan sponsored by National Grid and

1

funded by a group life insurance policy issued by MetLife. (Am. Compl. ¶¶ 2, 7.) MetLife, as claim fiduciary, must administer claims in accordance with ERISA and the documents and instruments governing the plan. (*Id*. ¶ 8.) The Plan's Certificate explicitly establishes the right of a Plan participant to name his or her beneficiary. (*Id*. ¶ 10.) The most recent beneficiary designation on file is dated March 24, 2021 ("2021 Beneficiary Designation"), and names as primary beneficiaries Bouchereau and Tompkins, who would receive 70% and 30%, respectively. (*Id*. ¶ 11.) The only other designation form on file at the time of the Decedent's passing is dated October 17, 2011 (the "2011 Beneficiary Designation"), and, contrary to the 2021 Beneficiary Designation, designates Ruggiero as the only beneficiary of the life insurance benefits. (*Id*. ¶ 12.)

The Decedent died on April 2, 2021, a mere 9 days after changing his beneficiary designation. (*Id*. ¶ 13.) At the time of his death, the Decedent was enrolled in the Plan for Basic Life insurance coverage, specifically in the amount of $96,000 and was also enrolled in the Optional Life Insurance Plan in the amount of $70,000. (*Id*. ¶ 14.) MetLife then received a letter on April 13, 2021, from Ruggiero, advising MetLife that Decedent was a paraplegic with limited mobility and that he required in-home care for the majority of his life. (*Id*. ¶ 16.) Ruggiero further stated that during his last month of life, the Decedent was confined to his bed, relying on care professionals, and that his physical and mental state made him an easy victim of persuasion. (*Id*.) Ruggiero's letter further stated Bouchereau was Plaintiff's purported Certified Nursing Assistant ("CNA"). (*Id*.) Bouchereau is supposedly a retired music teacher who contacted the Decedent through Facebook, had no familial ties to the Decedent, and lacks the proper certification and training to be a CNA. (*Id*.) Tompkins is the sister of Bouchereau; Ruggiero reasons it is odd that in the last four months of Decedent's life, Bouchereau and Tompkins were named as primary

beneficiaries and notes that criminality as the cause of death for the Decedent has not been ruled out. (*Id*.)

MetLife subsequently received a Life Insurance Claim Form from Bouchereau dated April 18, 2021, seeking recoupment of the Plan Benefits. (*Id*. ¶ 18.) Thereafter, on April 22, 2021, MetLife received a Life Insurance Claim Form from Tompkins, also seeking the Plan Benefits. (*Id*. ¶ 19.) William Onofry of Walsh & Onofry ("Onofry") was retained as counsel for Ruggiero and, on April 22, 2021, wrote a letter to MetLife stating that Ruggiero was the sole beneficiary of the Decedent's estate and life insurance contracts. (*Id*. ¶ 20.) In support of this representation, Onofry provided the Decedent's Last Will and Testament dated February 20, 2007, wherein the Decedent purportedly bequeathed his estate to Ruggiero. (*Id*. ¶ 21.)

On September 8, 2021, Onofry wrote to MetLife stated that the Decedent's body was being examined by the Medical Examiner and that the police were considering whether the Decedent's cause of death was due to homicide and/or assisted suicide. (*Id*. ¶ 22.) Subsequently, on August 2, 2023, Detective Sergeant Kevin Moscatiello ("Moscatiello") of the Port Jervis Police Department wrote by letter stating that the death of the Decedent was being investigated, that it was deemed "suspicious," and that Bouchereau and Tompkins were persons of interest. (*Id*. ¶ 23.)

On August 16, 2023, MetLife sent pre-interpleader letters to Onofry, Bouchereau and Tompkins. (*Id*. ¶ 24.) Currently, MetLife cannot determine whether a Court would find the 2021 Beneficiary Designation valid. (*Id*. ¶ 25.) Depending on the designation's validity, the Plan Benefits would be payable to Bouchereau and Tompkins, or to Ruggiero. (*Id*. ¶¶ 32-32.) MetLife cannot determine the beneficiary of the Plan Benefits at issue without exposing itself, the Plan and National Grid to double liability. (*Id*. ¶ 33.)

MetLife states it has no interest in the Plan Benefits, except to recover attorneys' fees and the costs of the instant action. (*Id.* ¶ 34.) MetLife asserts that it is ready, willing and able to pay the Plan Benefits to whichever Defendant(s) the Court designates as the Plan's anticipated beneficiary. (*Id.* ¶ 35.) MetLife advises the Court that it will deposit into the Registry of the Court the Plan Benefits, plus any applicable interest due and owing under the terms of the Plan, ahead of disbursement in accordance with the Court's anticipated order in the instant action. (*Id.* ¶ 36.)

Based on the foregoing, Plaintiff seeks a judgment restraining and enjoining the Defendants from instituting any action or proceeding against MetLife, National Grid or the Plan for the recovery of Plan Benefits plus any applicable interest by reason of the Decedent's death, requiring that Defendants litigate or settle and agree between themselves their respective claims for the Plan Benefits, or, upon their failure to do so, that the Court settle and adjudicate their claims to determine to whom the Plan Benefits, plus any applicable interest, should be paid, permitting MetLife to pay into the Registry of the Court the Plan Benefits, plus any applicable interest, dismissing MetLife with prejudice from this action and discharge MetLife, National Grid and the Plan from any further liability upon payment of the Plan Benefits, plus any applicable interest into the Registry of this Court, and awarding its costs and attorneys' fees.

Finally, Ruggiero asserts a series of cross-claims against Bouchereau and Tompkins. Presently at issue before the Court in light of Tompkins' pending motion to dismiss, the relevant cross-claims levied against Tompkins are: second cross-claim of fraud, fourth cross-claim of undue influence, fifth cross-claim of intentional interference with an inheritance expectancy, sixth cross-claim of disqualification pursuant to the slayer's rule, and a seventh-cross claim seeking declaratory judgment finding that the 2021 Beneficiary Change is invalid and void.

**PROCEDURAL HISTORY**

On December 5, 2023, Plaintiff commenced this action against the Defendants in its Complaint. (ECF No. 1.) Thereafter, on January 29, 2024, Plaintiff filed its Amended Complaint against Defendants. (ECF No. 17.) Ruggiero filed her answer, asserting crossclaims against Bouchereau and Tompkins. (ECF No. 20.) Tompkins filed her motion to dismiss Plaintiff's Amended Complaint. (ECF No. 27.) Plaintiff filed its opposition to Tompkins' motion to dismiss. (ECF No. 38.) Plaintiff also filed a brief in support of its interpleader application. (ECF No. 37.) Bouchereau and Tompkins filed respective oppositions to Plaintiff's interpleader application. (ECF Nos. 39 and 40.) Plaintiff then filed a sur-reply to the Bouchereau and Tompkins' respective opposition papers. (ECF No. 43.)

**LEGAL STANDARD**

A. Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When there are well-pled factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. While the Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation," or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555). The Second Circuit "deem[s] a complaint to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference . . . and documents

that plaintiffs either possessed or knew about and upon which they relied in bringing the suit." *Rotham v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000) (internal citations omitted). The critical inquiry is whether the Plaintiff has pled sufficient facts to nudge the claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. A motion to dismiss will be denied where the allegations "allow[] the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## DISCUSSION

Plaintiff brings forth an interpleader application, and Defendant Ruggiero asserts a series of cross-claims against Defendants Bouchereau and Tompkins. The Court addresses them in turn.

### A. Tompkins' Motion to Dismiss

Per Federal Rule of Civil Procedure 12(b)(6), a party "may assert" the defense against a plaintiff's complaint of a "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

Here, Tompkins' motion to dismiss is fatally insufficient. Despite seeking a wide array of relief – dismissal of Plaintiff's interpleader application and dismissal of a large number of cross-claims – Tompkins' motion to dismiss is a mere six paragraphs, most of which consists of conclusory language accusing Plaintiff and Ruggiero of furnishing "baseless claims," of being "biased, unfair and misleading," and of making "premature[] and careless[] conclusions" and "unfair decision[s]." (Mot. ¶¶ 3-6.) These arguments are unavailing and do not actually address how Plaintiff or Ruggiero failed to properly plead their claims in the instant action, and, accordingly, are not sufficient to invoke the defenses articulated under Federal Rule of Civil Procedure 12(b)(6). Therefore, the Court must deny Tompkins' motion to dismiss in its entirety.

### B. Interpleader Jurisdiction

28 U.S.C.A. § 2361 controls the scope of the Court's interpleader jurisdiction. "The federal interpleader statute grants district courts original jurisdiction over actions of interpleader . . . where a plaintiff stakeholder has in its possession money or property worth $500 or more that is or may be the subject of adverse claims by two or more claimants of diverse citizenship . . . [t]he plaintiff must be disinterested as to the competing claims and must deposit the fund or property with the court in order to be discharged from the action." *William Penn Life Ins. Co. of New York v. Viscuso*, 569 F. Supp. 2d 355, 359 (S.D.N.Y. 2008). Additionally, "[t]he existence of a single, identifiable stake is a necessary element of interpleader jurisdiction." *Id*.

The federal interpleader statute holds that "[i]n the civil action of interpleader . . . a district court may issue its process for all claimants and enter its order restraining them from instituting or prosecuting any proceeding in any State or United States court affecting the property, instrument or obligation involved in the interpleader action until further order of the court . . . Such district court shall hear and determine the case, and may discharge the plaintiff from further liability, make the injunction permanent, and make all appropriate orders to enforce its judgment." 28 U.S.C.A. § 2361.

Interpleader actions occur in two stages, generally. *N.Y. Life Ins. Co. v. Conn. Dev. Auth.,* 700 F.2d 91, 95 (2d Cir.1983). Initially, the Court is to determine "whether interpleader jurisdiction exists and, if it does, [to] discharge the stakeholder from the action." *Viscuso*, 569 F. Supp. 2d 355 at 359. Thereafter, the Court may adjudicate the parties' competing claims. *Id*.

Here, it is undisputed that the Court has interpleader jurisdiction over the instant action. The MetLife life insurance policy is "worth more than $500 and [the] defendants are of diverse citizenship." *Id*. at 360; *see* (Am. Compl. ¶¶ 2-4.) Additionally, the Plan Benefits is subject to

7

"adverse claims by two or more claimants," specifically being on one side Ruggiero and the opposing side Bouchereau and Tompkins. (*Id*. ¶¶ 18-20.) MetLife, as a mere stakeholder, is a disinterested party in the recoupment of benefits, clearly not being one of the Plan Benefits' anticipated beneficiary, and instead solely seeks the Court's ruling on which party it is liable to for furnishing the Plan Benefits to avoid multiple, inconsistent findings of liability. (*Id*. ¶ 34); *see also Citigroup Global Mkts., Inc. v. KLCC Invs., LLC,* 2007 WL 102128, at *7 (S.D.N.Y. Jan. 11, 2007). While MetLife has not yet disputed the funds totaling the Plan Benefit amount, any such "deposit has been construed as a requirement of maintaining interpleader jurisdiction, rather than as a prerequisite to bringing suit." *Viscuso*, 569 F. Supp. 2d 355 at 360.

Thus, per *Viscuso* and the requirements articulated in the federal interpleader statute, the Court finds that Plaintiff has sufficiently invoked interpleader jurisdiction in the instant action.

### C. The Plan's Proper Beneficiary

While the Court has found that interpleader jurisdiction is appropriate in the instant action, the Court concludes that it cannot yet consider the merits of the defendants' competing claims to the Plan. As stated *supra*, the Court may, but need not, decide the veracity of the competing claims in the same opinion and order that it finds interpleader jurisdiction applicable. *Viscuso*, 569 F. Supp. 2d 355 at 359; *Hartford Life Ins. Co. v. Simonee*, No. 14-CV-7520, 2015 WL 8490998, at *2 (E.D.N.Y. Dec. 10, 2015) ("Whether [an interpleader] is brought by rule or statute, courts adopt a two-step approach to evaluating the action"). The "motion to dismiss before the Court[, which the Court has denied,] implicates only the first stage." *Madison Stock Transfer, Inc. v. Exlites Holdings Int'l, Inc.*, 368 F. Supp. 3d 460 (E.D.N.Y. 2019). The defendants have not briefed the Court on the basis of their competing claims to the Plan Benefits, and, accordingly, the Court is without a sufficient record to determine who is to receive the benefits of the MetLife life insurance policy.

Accordingly, the Court "defers that issue to the second stage of the interpleader action." *JPMorgan Chase Bank, N.A. v. 29-33 Ninth Ave., LLC*, 710 F. Supp. 3d 259, 282 (S.D.N.Y. 2024).

### D. MetLife's Motion for Attorneys' Fees

Important context is that "[t]he decision to award fees and costs ... is left 'to the sound discretion of the district court.'" *Feehan v. Feehan,* No. 09 Civ. 7016, 2011 WL 497852, at *6 (S.D.N.Y. Jan. 10, 2011), *adopted* by 2011 WL 497776, at *1 (S.D.N.Y. Feb. 10, 2011). Courts in this Circuit have repeatedly stressed that "courts need not award attorneys' fees in interpleader actions where the fees are expenses incurred in the ordinary course of business." *Travelers Ins. Co. v. Estate of Garcia,* No. 00 Civ. 2130, 2003 WL 1193535, at *4 (E.D.N.Y. Feb. 4, 2003). Indeed, this is "particularly true in the case of insurance companies, where minor problems that arise in the payment of insurance policies must be expected and the expenses incurred are part of the ordinary course of business." *Id*. It is plainly evident that the competing claims here are merely "[c]onflicting claims to the proceeds of a policy [which] are inevitable and normal risks of insurance business." *Companion Life Ins. Co. v. Schaffer,* 442 F. Supp. 826, 830 (S.D.N.Y.1977). Therefore, the Court denies MetLife's motion for attorneys' fees.

## CONCLUSION

For the foregoing reasons, the Court DENIES Defendant Kereen Tompkins' Motion to Dismiss Judith Ruggiero's cross-claims, specifically Judith Ruggiero's second cross-claim of fraud, fourth cross-claim of undue influence, fifth cross-claim of intentional interference with an inheritance expectancy, sixth cross-claim of disqualification pursuant to the slayer's rule, and seventh-cross claim seeking declaratory judgment finding that the 2021 Beneficiary Change is invalid and void. Additionally, the Court DENIES Kereen Tompkins' Motion to Dismiss Plaintiff

Metropolitan Life Insurance Company's Amended Complaint and, instead, GRANTS the Interpleader Application.

The Court therefore restrains and enjoins the Defendants from instituting any action or proceeding in any state or United States court against Metropolitan Life Insurance Company, National Grid Group, or the Plan for the recovery of the Plan Benefits, plus any applicable interest by reason of the death of the Decedent. Additionally, Metropolitan Life Insurance Company, National Grid Group, or the Plan are wholly and completed discharged and absolved from any further liability, of whatsoever nature, to the Defendants and any other claimant in connection with the Plan Benefits.

Metropolitan Life Insurance Company is directed to pay into the Registry of the Court the Plan Benefits, $118,000 plus any applicable interest. The Clerk of Court is kindly directed to accept and deposit the interpleader funds into the Disputed Ownership Fund (DOF) in the Court Registry Investment System (CRIS), pending further Order of the Court.

Finally, the Court DENIES Metropolitan Life Insurance Company's Motion for Attorneys' Fees. Plaintiff Metropolitan Life Insurance Company is to be dismissed from the instant action.

The parties are directed to complete and file a Case Management Plan and Scheduling Order (blank form attached) by April 28, 2025.

The Clerk of Court is respectfully directed to terminate the motion at ECF No. 27, to terminate Plaintiff Metropolitan Life Insurance Company from the instant action, and to mail a copy of this Order to the *pro se* Defendants Regine Bouchereau and Kereen Tompkins at the addresses listed on ECF and to show service on the docket.

Dated:   March 28, 2025                                                         SO ORDERED:
             White Plains, New York

_____
                                                              NELSON S. ROMÁN
                                                       United States District Judge

UNITED STATES DISTRICT COURT                                                     Rev. Jan. 2012

SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

                                                              **CIVIL CASE DISCOVERY PLAN**

                     Plaintiff(s),            **AND SCHEDULING ORDER**

- against -

                     Defendant(s).            _____ CV _____ (NSR)

---------------------------------------------------------------x

This Civil Case Discovery Plan and Scheduling Order is adopted, after consultation with counsel, pursuant to Fed. R. Civ. P. 16 and 26(f):

1. All parties [consent] [do not consent] to conducting all further proceedings before a Magistrate Judge, including motions and trial, pursuant to 28 U.S.C. § 636(c). The parties are free to withhold consent without adverse substantive consequences. (If all parties consent, the remaining paragraphs of this form need not be completed.)

2. This case [is] [is not] to be tried to a jury.

3. Joinder of additional parties must be accomplished by _____.

4. Amended pleadings may be filed until _____.

5.  Interrogatories shall be served no later than _____, and responses thereto shall be served within thirty (30) days thereafter. The provisions of Local Civil Rule 33.3 [shall] [shall not] apply to this case.

6.  First request for production of documents, if any, shall be served no later than _____.

7.  Non-expert depositions shall be completed by _____.

    a.  Unless counsel agree otherwise or the Court so orders, depositions shall not be held until all parties have responded to any first requests for production of documents.

    b.  Depositions shall proceed concurrently.

    c.  Whenever possible, unless counsel agree otherwise or the Court so orders, non-party depositions shall follow party depositions.

8.  Any further interrogatories, including expert interrogatories, shall be served no later than _____.

9.  Requests to Admit, if any, shall be served no later than _____.

10. Expert reports shall be served no later than _____.

11. Rebuttal expert reports shall be served no later than _____.

12. Expert depositions shall be completed by _____.

13. Additional provisions agreed upon by counsel are attached hereto and made a part hereof.

14. **ALL DISCOVERY SHALL BE COMPLETED BY** _____.

15. Any motions shall be filed in accordance with the Court's Individual Practices.

16. This Civil Case Discovery Plan and Scheduling Order may not be changed without leave of Court (or the assigned Magistrate Judge acting under a specific order of reference).

17. The Magistrate Judge assigned to this case is the Hon. _____.

18. If, after entry of this Order, the parties consent to trial before a Magistrate Judge, the Magistrate Judge will schedule a date certain for trial and will, if necessary, amend this Order consistent therewith.

19. The next case management conference is scheduled for _____, at _____. (The Court will set this date at the initial conference.)

SO ORDERED.

Dated:   White Plains, New York

   _____

                                                                              _____
                                                                              Nelson S. Román, U.S. District Judge